UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:
ANGEL GUADALUPE

Debtor

Chapter 13

Case No. 05-21109

APPEARANCES:

Anthony S. Novak, Esq.
Chorches and Novak, P.C.
1331 Silas Deane Highway, Suite 202, Wethersfield, CT 06109
Counsel for Debtor

John B. Nolan, Esq. and Brian R. Elias, Esq.
Day, Berry & Howard LLP
CityPlace I, Hartford, CT 06103-3499
Counsel for Capital Bonding Corp., Harco Nat'l Ins. Co., Surety Administrators, Inc.

## RULING ON DEBTOR'S OBJECTIONS TO PROOFS OF CLAIMS

KRECHEVSKY, U.S.B.J.

I.

Angel Guadalupe ("the debtor"), on April 8, 2005, filed a petition for relief under Chapter 13 of the Bankruptcy Code. Thereafter Capital Bonding Corporation ("CBC"), Harco National Insurance Company ("Harco"), Surety Administrators, Inc. ("SAI") (together "the creditors") filed separate proofs of claim pursuant to Bankruptcy Code §501. Each claim is in the amount $2,241,338.21. The debtor, on September 16, 2005, filed objections to the proofs of claim seeking their disallowance "in full."

The matter came on for hearing on February 23 and March 31, 2006. At the start of the hearing, counsel for the creditors stated that notwithstanding the three filed

proofs of claim, there is but a single unsecured claim against the debtor in the amount of $719,038.38, arising out of the debtor's alleged breach of contract. Following the conclusion of the hearing, the parties submitted initial and reply briefs containing their arguments.

## II.

## BACKGROUND

### A.

The debtor, a licensed Connecticut bail bondsman, and CBC, a Pennsylvania licensed surety bond agency, entered into an agreement entitled "Bail Bond Subagency Agreement" ("the Agreement"). The debtor negotiated the Agreement with Vincent Smith ("Smith"), the then owner and president of CBC. Section 3 of the Agreement listed the debtor's duties. Briefly summarized, the debtor, himself and through "Sub-Sub Agents," was to promote CBC's criminal bail bond business in Connecticut, transmit the bail bond premiums to CBC, net of what the debtor was entitled to retain as compensation, maintain records of the bail bond business in such form as CBC indicates, and weekly to submit a report of the bail bond business written.

Section 8 of the Agreement provided that so long as the debtor complies with all his obligations to CBC, CBC "will bear the penal liability exposure with respect to all Bonds written by [the debtor] and the Designated Sub-Sub Agents within the scope of their authority." (Exh. 1.) If, however, the debtor violated any of his obligations, the debtor would be liable to CBC for all losses CBC sustained under the Agreement. (Agreement §§8(b), (d).)

2

**B.**

The debtor started performing his duties under the Agreement while located in the CBC office in Hartford, Connecticut. Three employees of CBC were also located in this office. The debtor and the CBC employees moved to an office in New Britain, Connecticut after a fire damaged the Hartford office in 2000. The New Britain office was located in premises leased by A.G. Surety LLC, the debtor's wholly owned entity. At this office, the debtor continued to perform his duties, e.g. processing the paperwork involved in issuing bail bonds and sending weekly reports to CBC in Pennsylvania. Approval for issuing bail bonds in excess of $25,000 was by a CBC employee known as a bail tech. The debtor had no such authority.

The debtor testified Smith frequently called him urging the issuance of more bail bonds. He stated that on occasion he received a bill from the CBC office in Pennsylvania for a liability where a bonded individual "skipped" his court appearance. The debtor would then call Smith reminding him of the "no liability" contract, and Smith would take steps to stop further billing of the debtor.

In the spring of 2004, Harco removed Smith from his duties at CBC, CBC stopped writing bonds in Connecticut and Harco took over CBC's responsibilities. Harco representatives came to the New Britain office and removed all CBC property. The debtor asked for a receipt for the removed property that was the debtor's responsibility, but the Harco persons refused.

The debtor stated during Smith's running of the Pennsylvania office that office was disorganized - the debtor would receive questions from the Pennsylvania office about files that could not be located in the Pennsylvania office, and that the debtor

3

would then send copies of those files to Pennsylvania. The debtor never received any deficiency letters from CBC, and had been complimented by Smith for doing a good job.

Harco sent the debtor a letter, dated May 19, 2004, advising that "this letter will serve as written notice that your bail bond agent authority to solicit and/or write bail bonds on behalf of the Company (Harco National Insurance Company) through its Program Administrator (Capital Bonding Corporation) is terminated upon receipt of this letter." (Exh. 3.)[1] The debtor was requested to return all CBC property to its office in Pennsylvania. The debtor received a letter dated November 12, 2004 from SAI stating it "has obtained the rights to your debt to CBC" and to make all payments to SAI.

The debtor presented the testimony of Francis Shank ("Shank"), the owner of the leased New Britain premises. Shank testified the premises had been under such lease since 1999, if not before, and that, in October 2004, the debtor stopped paying the rent. The debtor left the premises at the end of 2004. When Shank examined the premises in February 2005, he saw that the debtor's files, records and paperwork remained at the premises. Shank then proceeded to throw away all the debtor's files, records and paperwork. A month later, the debtor returned to the property to retrieve such records. When the debtor realized what had happened, Shank stated the debtor was very angry with him and started to cry. The debtor's files apparently contained copies of all reports he had sent to CBC.

---

[1] Harco, on April 26, 2004, sent the debtor a letter "temporarily" suspending the debtor's authority to write bail bonds.

4

## C.

The creditors presented the testimony of Angelo De Lorenzo ("De Lorenzo"). De Lorenzo had considerable experience in the bail bond industry. He worked for CBC from September 6, 2002 to March 2004, when he left to form his own business. He returned to CBC in July 2004 to work with the CBC accounting department to review collections of premiums. He testified that after examining the records at CBC, plus records received from the debtor, he prepared Exhibit 9, entitled "Summary of Premiums, Judgments and Fees Owed" ("the summary") which purports to itemize the various losses establishing the total debt due the creditors, i.e., $719,038.38.[2] Under the heading "Premiums" with a starting date of 4/15/02, the amount of $12,469 is claimed due; under "Forfeiture Judgment," starting 2/20/01, $695,875 is claimed due; under "Risk" starting 2/20/01, the obligations total $7,950; under "Attorney" starting 11/05/01 a debt of $677.25 is claimed; and under the heading of "Surr" starting 4/17/03, the obligation is $2,267.63.[3] De Lorenzo had no personal knowledge of the background of these obligations, other than reviewing files at CBC. The debtor did not object to the admission into evidence of the summary[4].

---

[2] If the debtor is liable for the amount claimed, he will not be eligible to be a debtor under Chapter 13. Section 109(e) limits a Chapter 13 debtor to owing unsecured debt of less than $307,675.

[3] According to the creditors, "Attorney" represents attorney's fees paid by CBC and "Surr" represents recovery fees paid by CBC to recovery agents.

[4] The summary is based upon supporting individual documents for each entry, which both parties assumed were admitted into evidence as Exhibit 6.

5

III.

## ARGUMENTS OF THE PARTIES

### A.

The debtor denies he owes "premiums, judgments or fees of any kind" to the creditors. (Debtor's Brief at 2.) The sole document governing the conduct of the parties was the Agreement and the debtor claims that he was in full compliance with it and the procedures established by Smith. The debtor contends that CBC's office in Pennsylvania was in disarray and that "Harco is attempting to collect against the debtor for poor management decisions and improper bond approvals which were specifically sanctioned by Smith." (Debtor's Brief at 11-12.) Although the debtor lost his records when his landlord, Shank, threw them out, there is no requirement in the Agreement that he maintain duplicate records. He emphasizes that Smith never sent him any notices of any kind that the debtor was not in compliance with the Agreement.

### B.

The creditors argue that the debtor's defense to liability for breach of the Agreement is based solely on his word, and the court should not credit any of the debtor's testimony. They refer to his alleged "penchant for dishonesty." (Creditors' Brief at 16.) They note that the debtor does not contest any of the charges itemized in the summary. They claim the prima facie evidence accorded their proof of claim by Fed. R. Bankr. P. 3001(f) has not been overcome by the debtor. They further claim that the debtor's records having been destroyed, the court should conclude the debtor destroyed the records and the creditors are thereby entitled to an inference that the destroyed documents would have been unfavorable to the debtor's position in this

6

action.

## IV.

## CONCLUSIONS

### A.

The parties do not disagree on the well-settled principles applicable to this proceeding.

> Fed. R. Bank. P. 3001(f) provides: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." An objecting party, accordingly, must provide evidence indicating the claim is not valid. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant.

In re Vanegas, 290 B.R. 190, 193 (Bankr. D.Conn. 2003) (citations omitted); See also Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) (holding that burden of proof in objection to claim is determined by applicable non-bankruptcy law).

> To overcome this prima facie evidence [of the proof of claim], the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim. . . . If ... evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to prove the validity of the claim by a preponderance of the evidence. . . . The ultimate burden of proof always rests upon the claimant.

In re Reilly, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000) (citations omitted).

### B.

The court concludes the creditors have not met their burden of persuasion and the debtor's objection will be sustained. The creditors, in their post-hearing brief, have urged the court to discredit the testimony of the debtor. However, after giving due

7

consideration to the creditors' arguments, the court concludes that the debtor's testimony is credible as to the relationship of the debtor and CBC during the four to five year period of the Agreement. Smith was the person running CBC during this entire period and at no time have the creditors established he considered the debtor not to be in compliance with the Agreement's "no-liability" requirements. According to the summary (Exh. 9), the great majority of the sums claimed due were incurred in 2001, three years before Smith was removed from operating CBC. The CBC records (Exh. 6) put into evidence by the creditors supports the debtor's testimony that Smith was satisfied that the debtor was not liable for the forfeitures. At least ten forfeitures shown in the summary (Exh. 9) as having occurred in 2001 were not invoiced until 2004. In instances where the debtor was invoiced for a forfeiture,[5] the creditors introduced no evidence of follow-up correspondence that would refute the debtor's testimony that, on the few occasions when he did receive an invoice for a forfeiture, he would call Smith to question the charge; that Smith would "take care of it with the risk coordinator;" and that the debtor would receive no further bills or other follow-up for such matters. (2/23/06 Tr. at 65.) CBC's practices concerning the invoicing of forfeitures support the debtor's testimony that he had complied with the no-liability requirements established by CBC during Smith's tenure. De Lorenzo conceded that, "In most instances with the many, many, many reports that Mr. Guadalupe wrote, most of the time they were absolutely correct." (3/31/06 Tr. at 31.) The court finds the creditors' arguments concerning the loss of the debtor's records not material.

---

[5] For example, Exhibit 9 shows a charge to the debtor of $391,000 on November 5, 2001 for a forfeiture based on bonds issued by a sub-sub agent for one "Buddy Beavers."

8

In light of the court's conclusion in this proceeding, the creditors' motions for relief from stay and to dismiss or convert the debtor's case, which were scheduled for hearing along with the objection to claim, are dismissed based on the creditors' lack of standing. It is

SO ORDERED.

Dated at Hartford, Connecticut this 13th day of June, 2006.

                                                _____
                                                ROBERT L. KRECHEVSKY
                                                UNITED STATES BANKRUPTCY JUDGE

9